# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                          No. CR 07-0886  JB

WARREN ERIC JACKSON,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed March 21, 2008 (Doc. 71).  The Court held a sentencing hearing on April 18, 2008.  The primary issue is whether the Court should sustain Defendant Warren Eric Jackson's objections to information contained in the Presentence Investigation Report ("PSR") in light of information supplied by the Addendum to the PSR.  Because the Addendum addressed Jackson's objections and concerns, the Court will overrule Jackson's objections as moot.  The Court will also impose a 30-month term on Jackson, at the low-end of the advisory Guideline range.

## <u>FACTUAL BACKGROUND</u>

Paragraph 59 of the PSR states that "Warren Eric Jackson is 5'8", weighs 220 pounds and has brown eyes and dark brown hair."  <u>Id.</u> ¶ 59, at 17.  Jackson "disclosed having no tattoos or visible scars or marks."  <u>Id.</u>  Jackson stated "he suffers from poor health including Scaroidosis, Hepatitis C, Endocarditis, Scleroderma and Methisillin Resistant Staphylococcus Auerus (MRSA)."  <u>Id.</u>  In paragraph 64 of the PSR, the USPO notes:

> In approximately 2004, Jackson was diagnosed with Hepatitis C at the VA Hospital in Albuquerque, New Mexico.  Hepatitis C is a disease of the liver that is caused by

the Hepatitis C virus, or HCV.  Hepatitis C is a serious condition that damages the liver and can lead to fatal liver diseases such as cirrhosis, liver failure and liver cancer.  It is one of the most common reasons people receive liver transplants. Hepatitis is transmitted if your blood comes into contact with blood from someone who has the virus.  However, the most common cause of transmission is the sharing of needles and other equipment used to inject illegal drugs.  Side effects of Hepatitis C include tiredness, trouble thinking, moodiness, and depression.  According to the Veterans Administration records, due to Jackson's history of nasal cocaine use, his hepatitis panel was checked and he was found to be hepatitis C antibody positive.

Id. ¶ 64, at 18-19.  In paragraph 77 of the PSR, the USPO states:

What is apparent through out Jackson's history is his drug use and addiction to crack cocaine.  Throughout his criminal convictions and various other contacts with law enforcement, he continually tested positive for drug use and at one point, his parole was revoked.  Moreover, during the instant offense the defendant tested positive for cocaine use on two occasions.  It appears Jackson has somewhat minimized his addiction and any risks regarding relapse.  He lamented on his history of schizophrenia and depression and admits his drug use made those conditions worse. He has been in many treatment programs and usually relapses six or seven months after.  He maintained crack has rendered him homeless, and he lost everything including his marriage of 17 years.  It has caused him to become suicidal and depressed.  He does, however, realize he needs to create a better life away from drugs.  He expressed great resentment due to using drugs and how much his use has hurt his family.  Continued drug treatment while in custody and upon release could be beneficial.

Id. ¶ 77, at 21.  Paragraph 113 of the PSR states:

After a review of the defendant's criminal and social history, and details of the instant offense it is assertable that this defendant has endured a long battle with cocaine addiction, including submitting to positive urinalysis during his release in the instant offense.  It is also noted that the defendant suffers from multiple physical and mental ailments requiring several medications and a continuity of treatment.  It is the defendant's inability to stick to a regimented treatment schedule on his own that has lead him to be discharged from several treatment centers and compounds his mental condition.  The defendant has stated his addiction to cocaine has caused him to lose everything in [h]is life.  A Bureau of Prisons Medical Facility, is fully capable of handling the defendant's conditions and assures a continuity of treatment in a structured environment in which the defendant needs in order to provide the defendant with a strictly monitored regiment to promote his health and help other beneficial effects.  Adequate medical care can be provided at the Medical Facility.

Id. ¶ 113, at 30.  Paragraph 48 of the PSR states:

According to Albuquerque Police Department police reports dated September 24, 2003, Jackson was arrested subsequent to a traffic stop.  The officer contacted Jackson who identified himself as Rick Jackson, but later learned his true identity and that Jackson had a misdemeanor warrant in Bernalillo County Metropolitan Court in case number TR1759700.  He was arrested for Concealing Identity, Possession of Drug Paraphernalia, as well as the misdemeanor warrant.  No further information was located for charges of Concealing Identity, and Possession of Drug Paraphernalia.

PSR ¶ 48, at 14, disclosed February 13, 2008.

## PROCEDURAL HISTORY

Jackson was indicted on May 8, 2007 on two counts.  See Redacted Indictment, filed May 8, 2007 (Doc. 14)("Indictment").  Count I charged Jackson with conspiring to possess, with intent to distribute, more than five grams of a mixture and substance containing cocaine base, a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  See Indictment at 1.  Count II charged Jackson with possessing with intent to distribute more than five grams of a mixture containing cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2.

On November 27, 2007, Jackson entered into a Plea Agreement with the United States.  See Plea Agreement, filed November 27, 2007 (Doc. 48).  Jackson agreed to plead guilty to Count II of the Indictment.  See id. at 2.  The United States agreed to stipulate that the applicable offense level for calculation of Jackson's sentence would be based on Jackson's personal possession or distribution of, or awareness that others would possess or distribute, more than twenty but less than thirty-five grams of cocaine base.  See id. at 6.  Jackson's offense level is 9, his criminal history category is I, and the guideline imprisonment range is 30 to 37 months.  See PSR ¶¶ 34, 43, 93, at 9, 13, 26.

On March 21, 2008, Jackson filed a Sentencing Memorandum containing several objections

and corrections to the PSR, and a request for a reasonable sentence.  See Doc. 71.  The United States

has not objected to the PSR.

In his first objection, Jackson objects to the suggestion in paragraph 48 of the PSR that he

has impersonated someone else by identifying himself as "Rick Jackson."  Sentencing Memo. ¶ 1,

at 3.  Jackson represents that he "is known as 'Rick' to all of his family members.  Consequently,

using the name 'Rick' was as sinister as using one's own nickname."  Id.

The USPO responded that paragraph 48 of the PSR did not state that Jackson represented

himself as someone else or impersonated someone.  See Addendum at 1.  The USPO contends that

the information contained in paragraph 48 was "based on a police report which indicate[d] [Jackson]

used the name 'Rick' to identify himself to an officer."  Id.  The USPO states that paragraph 48 of

the PSR will remain unchanged, "as there are no inaccurate statements gleaned from the information

provided."  Id.

Jackson contends, in his second objection, that paragraph 59 fails to note that he has a

significant scar on his thigh that is the result of a surgery he had because of "an aggressive MRSA

infection."  Sentencing Memo. ¶ 2, at 3.  The USPO counters that the PSR "does not fail to note the

scarring and surgery undergone by Jackson."  Addendum at 1.  The USPO contends that paragraph

59 is "merely an introduction to [Jackson's] ailments which are discussed in detail in the subsequent

paragraphs from the medical records and information received."  Id.

In his third objection, Jackson notes that "Hepatitis C was not specifically identified by

scientists until approximately 1990."  Sentencing Memo. ¶ 3, at 3.  He notes that hepatitis infections

before 1990 were called "non-A, non-B hepatitis and there was no screening test for blood

donations."  Id.  Jackson states that, "[a]ccording to the Centers for Disease Control, a significant

number of individuals infected with HCV became infected as the result of blood transfusions."  Id.

-4-

The USPO responded that paragraph 64 of the PSR provides information regarding Jackson's diagnosis of Hepatitis C from medical records and lists side effects, as well as the most common way of contracting Hepatitis C.  See Addendum at 1.  The USPO contends that the "paragraph does not infer that Jackson obtained Hepatitis C through illegal drug use."  Id.

Jackson objects, in his fourth and fifth objections, to the last sentence of paragraph 71 of the PSR, which  states that "'Jackson is not able to follow a treatment regiment on his own or with any family support.'"  Sentencing Memo. ¶ 4, at 4 (quoting PSR ¶ 71, at 20).  Jackson concedes that he "has suffered from mental illness and illicit drug use," but contends that "a blanket statement that he is not able to follow a treatment regiment on his own or with family support is simply not true," Sentencing Memo. ¶ 4, at 4.  Jackson notes that he relapsed on two occasions during his pretrial supervision, but argues that, for the most part, he complied with his treatment regiment and the conditions imposed on him by the Court and supervised by Pretrial Services.  See id.  Jackson asserts that he hopes to do better and is not a person who "intentionally and willfully violates the law."  Id.  He asks for help with his problems and notes that he has made progress.  See id.

Jackson also objects to paragraph 77 of the PSR, stating that he "object[s] to the suggestion that he exhibits an indifferent attitude towards treatment."  Id. ¶ 5, at 4.  Jackson notes that he has struggled for a long time with his mental illness and drug addiction.  See id.  Jackson asserts that, if he were indifferent towards treatment, he would not have participated in the different treatment programs the USPO notes in the PSR.  See id.  Jackson argues that he did not become schizophrenic and depressed because he used drugs; rather, he "self-medicat[ed] for mental illness" by using drugs. Id.

The USPO contends that the last sentence of paragraph 71 of the PSR is based on its assessment of Jackson's "documented history of continued drug abuse, not just the instant offense."

Addendum at 2.  The USPO argues that Jackson's history of noncompliance begins in approximately 1998, when his supervision for a heroin conviction was revoked for his failure to comply.  See id. The USPO notes that Jackson has received treatment in facilities located in South Carolina, Arizona, and New Mexico.  See id.  The USPO contends that Jackson's medical records suggest that "he was terminated from many of these facilities for his continued cocaine use."  Id.  The USPO notes that, while he was on supervision for this offense, he tested positive on two occasions.  See id.  The USPO states that, because Jackson has been placed on electronic monitoring and "locked down" status, he has complied with the Court's orders.  Id.

The USPO contends that Jackson has "displayed an inability to stick to a regimented treatment schedule on his own."  Id.  The USPO states that the information contained in paragraph 71 of the PSR "is not meant to suggest Jackson caused his mental illness as a result of his illegal drug use rather than his mental illness combined with his continual cycle and long history of cocaine abuse is a major factor contributing to [his] continual decline in health and well being."  Id.  The USPO argues that Jackson's inability to stop his cocaine use complicates his mental and physical health.  See id.

Jackson notes, in his sixth and seventh objections, that he attended Arizona Wester College, not Arizona Western University.  See Sentencing Memo. ¶ 6, at 5.  He also argues that he did not intentionally misrepresent his time at Arizona Western College.  See id. ¶ 7, at 5.  "Although mistaken, Mr. Jackson believed that he had earned an associate of arts degree in dietary management."  Id.

The USPO corrects paragraph 78 of the PSR to reflect that Jackson attended Arizona Western College rather than Arizona Western University.  See Addendum at 3.  The USPO notes that Jackson's defense counsel reports that Jackson was mistaken and did not intentionally

misrepresent his completion of an associate of arts degree.  See id.

In his eighth objection, Jackson states, in regard to paragraph 113 of the PSR, that "his bigger battle has been with his mental illness which preceded his use of crack cocaine."  Sentencing Memo. ¶ 8, at 5.  The USPO contends that Jackson's "comments and remarks do not appear to object to anything stated in the paragraph.  Therefore, no changes were made to this paragraph."  Addendum at 3.

At the April 18, 2008 hearing, the United States stated that the only evidence it could offer as a factual basis for an amount less than 50 grams, rather than the 62.6 grams that were apparently confiscated with Jackson and his co-defendant, is Jackson's statement that his co-defendant provided him with approximately half of that quantity.  See Transcript of Hearing (taken April 18, 2008)("Tr.") at 4:15-5:4 (Court & Ramirez).[1]  The United States stated that it would not be able to show by a preponderance of the evidence that Jackson possessed more than 50 grams of cocaine base.  See id. at 5:7-10 (Court & Ramirez).

## LAW REGARDING SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory.  While excising two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> © to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute  . . .  shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (I) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to be considered.  See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due

consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006).  This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007); Rita v. United States, 127 S. Ct. at 2463. Instead, the trial court must undertake the § 3553(a)  balancing of factors without any presumption in favor of the advisory Guideline sentence.  See Gall v. United States, 128 S.Ct. at 591; Kimbrough v. United States, 128 S.Ct. at 564; Rita v. United States, 127 S. Ct. at 2463.

## LAW REGARDING APPLICATION OF STATUTORY MINIMUM AND THE SAFETY-VALVE PROVISION

Under the criteria set forth in 18 U.S.C. § 3553(f), a sentencing court may impose a sentence within the applicable Guideline range without regard to any statutory minimum sentence.  18 U.S.C. § 3553(f) provides:

> **(f) Limitation on applicability of statutory minimums in certain cases.** -- Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that--

> **(1)** the defendant does not have more than 1 criminal history point, as determined

under the sentencing guidelines;

(**2**) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(**3**) the offense did not result in death or serious bodily injury to any person;

(**4**) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(**5**) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(bolded in original).  U.S.S.G. § 5C1.2 provides that:

(a) Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of 4A1.3 (Departures Based on Inadequacy of Criminal History Category);

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has

concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

(b) In the case of a defendant (1) who meets the criteria set forth in subsection (a); and (2) for whom the statutorily required minimum sentence is at least five years, the offense level applicable from Chapters Two (Offense Conduct) and Three (Adjustments) shall be not less than level 17.

U.S.S.G. § 5C1.2.  "If a defendant meets certain criteria, a court will impose a guideline sentence and not a statutory minimum sentence."  United States v. Aguilar, No. CR 04-311 JB, 2005 WL 2313585 at * 3 (D.N.M. August 18, 2005)(Browning, J.)(citing U.S.S.G. § 5C1.2(a)).  The Tenth Circuit directs courts to "focus on the defendant's own conduct for purposes of evaluating eligibility for the safety valve."  United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1187 (10th Cir. 2004).

## ANALYSIS

The USPO's Addendum to the PSR addressed and resolved Jackson's objections.  See Tr. at 2:19-3:2 (Court & Dunleavy).  Jackson conceded that his objections were appropriately overruled as moot because the Addendum addressed his objections.  See id.

The Court finds that Jackson meets the criteria set forth in 18 U.S.C. § 3553(f)(1)-(5), and will impose a sentence pursuant to U.S.S.G. § 5C1.2.  Thus, the Court will consider a sentence within the applicable advisory Guideline range without regard to the statutory minimum sentence. The Court also agrees with the parties that the United States would not be able to prove that Jackson possessed more than 50 grams of cocaine base.  Accordingly, the advisory Guideline range is 30 to 37 months.

The Court notes that Jackson possessed with the intent to distribute 33.9 grams of cocaine base.  The Court believes that a sentence of 30 months reflects the seriousness of the offense,

promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and fully reflects the factors in 18 U.S.C. § 3553(a).  The Court also believes that this sentence was in the contemplation of the parties when they entered into the Plea Agreement.

**IT IS ORDERED** that the objections contained within the Defendant's Sentencing Memorandum are overruled as moot.  The Court imposes a term of 30 months on Defendant Warren Eric Jackson at the low-end of the advisory Guideline range.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Elaine Ramirez
   Assistant United States Attorney
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Susan Dunleavy
   Assistant Federal Public Defender
Federal Public Defender
Albuquerque, New Mexico

       *Attorney for the Defendant*